## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| REGINALD NELSON, AIS 204697, | : | |
| Plaintiff, | : | |
| vs. | : | CA 16-0476-TFM-MU |
| TONY LETT, et al., | : | |
| Defendants. | : | |

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R), on Plaintiff's operative pleading (Doc. 22), the motion for summary judgment filed by all named Defendants, that is, Correctional Officers Antywon Madison and Tony Lett, and Correctional Lieutenants Ashley Kidd and Deveron Brown[1] (Docs. 78 & 88; *see also* Doc. 95 (conversion order)), and Plaintiff's reply (Doc. 81; *see also* Docs. 90 & 93 (Plaintiffs' motion for leave to supplement reply with exhibits and the Order granting the motion)) and self-styled sworn statements (Docs. 82-83).[2] Upon consideration of the foregoing pleadings, the Magistrate Judge **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**.

---

[1]	On the date of the incident, Deveron Brown held the rank of sergeant. (*See* Doc. 78, Exhibit 8 (exhibit reflects that body chart was requested by Sgt. Brown)).

[2]	Nelson's statements are considered herein because they constitute unsworn declarations under penalty of perjury in compliance with 28 U.S.C. § 1746.

## PROCEDURAL AND FACTUAL BACKGROUND

Reginald Nelson originally filed a § 1983 complaint in this Court on September 7, 2016, against the Alabama Department of Corrections and seven correctional officers, arising out of an August 18, 2016 incident in which he was stabbed in the back by another inmate. (*See* Doc. 1.) After his complaint was served on at least most of the named defendants (*see* Docs. 7-13) but before the answers were due, Nelson filed an Amended § 1983 Complaint (Doc. 22) wherein he identified as Defendants only four of the correctional officers previously identified in the original complaint, namely, COI A. Madison, COI Tony Lett, Sgt. D. Brown, and Lt. A. Kidd (*compare id. with* Doc. 1). The Court ordered service of the amended complaint by Order dated April 3, 2017 (Doc. 27), recognizing that the Amended Complaint would take the place of the original complaint (*id.* at 1) and that, therefore, the four defendants named in the amended complaint were due to be served with that complaint (*id.*).

After entry of that Order, Nelson filed another form complaint on April 11, 2017 (Doc. 35); however, because that form complaint was unaccompanied by a motion to amend the complaint and, more importantly, was back-dated to September 1, 2016 and appeared to have been largely completed by Nelson's wife (Doc. 35, at 7), it was stricken by order dated May 17, 2017 (Doc. 39, at 3 n.2). Nelson was instructed to file a motion to amend his complaint and attach thereto a complaint form completed by him (and not his wife) by not later than May 30, 2017, if he wished to name additional defendants. (*Id.*) Plaintiff filed a response to this Order on May 26, 2017 (Doc. 40), and four days later he filed another § 1983 complaint form (Doc. 41); however, because it was not clear from the response filed on May 26, 2017, that Nelson wanted to file an

amended complaint and the form complaint filed separately some four days later named as defendants three completely different correctional officers (Doc. 41), by Order dated June 13, 2017, the undersigned informed Plaintiff that the Court would "deem the amended complaint filed on November 28, 2016 (Doc. 22), naming Madison, Lett, Brown, and Kidd as Defendants, to be the complaint serving as the basis for this action *if* the Court does not receive an amended complaint on or before **July 7, 2017** that contains all the persons Plaintiff wants as defendants and all his claims." (Doc. 44, at 3-4; *see also id.* at 4 ("In other words, Plaintiff does not have to do anything if he wants the November 28, 2016 complaint (doc. 22) to be the basis of this action and the defendants to this action to be Madison, Lett, Brown, and Kidd. But, on the other hand, if Plaintiff wants to add Defendants who are not in the November 28, 2016 complaint and add claims, he is **ORDERED** to file his comprehensive amended complaint containing all the defendants and all his claims on or before **July 7, 2017**.")).

When on June 26, 2017, Plaintiff filed a motion to amend his complaint to add Nurse Sabrina Peavy as a defendant (Doc. 48), the undersigned entered an Order on June 28, 2017 denying the motion on the basis that the amendment would be futile because Nelson's allegations showed only that Peavy was a witness to Plaintiff's medical treatment and specifically did not show that Peavy had violated his constitutional rights (*see* Doc. 49, at 1-2). As it turns out, the undersigned reacted too quickly to Nelson's motion to amend because on June 29, 2017, Plaintiff's form civil rights complaint adding Peavy as a defendant arrived in this Court (Doc. 51), prompting entry of another Order, dated July 20, 2017, which denied the amendment because no constitutional claim was stated against Peavy and because it was "duplicative of the

prior claims against Defendants Brown, Madison, Kidd, and Lett found in the amended complaint received on November 28, 201[6.]" (Doc. 56, at 2). In this Order, the Court made clear that the amended complaint found at Document 22 would be the operative pleading in this action (*see id.*), and it is to that pleading, the Defendants' motion for summary judgment, and the Plaintiff's reply and sworn statements to which the undersigned now turns for the crucial facts underlying this matter.

While there are some differences in the retelling of the events of August 18, 2016, those differences are about immaterial facts; the parties agree regarding the crucial and important facts. It is undisputed that Nelson, who was housed in Holman Correctional Facility's Segregation Unit, was escorted by Correctional Officers Antywon Madison and Tony Lett to the Segregation Shift Office to make a telephone call during the afternoon of August 18, 2016. (*Compare* Doc. 22, at 3 and Doc. 83, at 1 *with* Doc. 78, Exhibit 3, Affidavit of Antywon Madison, at ¶ 4 and Exhibit 6, Affidavit of Tony Lett, at 1.) Defendant Deveron Brown, the Segregation Shift Commander (Doc. 78, Exhibit 4, Affidavit of Deveron Brown, at ¶ 5), was in the shift office when Nelson made his telephone call (*compare id.* at ¶ 6 *with* Doc. 83, at 1). Regardless of whether the telephone call upset Nelson and caused him to charge out of the shift office, requiring his escorts to have to hustle to catch up with him, as the officers tell it (*see* Doc. 78, Madison aff., at ¶¶ 5-7; Brown aff., at ¶ 8-9; and Lett aff., at 1-2), or, as Plaintiff insists, he simply finished his call and exited the shift office with his escorts (Doc. 83, at 1),[3]

---

[3]     According to Nelson, when he walked out of the shift office he saw Inmate Corey Bedgood being escorted by Correctional Officer Kenneth Bettis (*see* Doc. 83), as did Officers (Continued)

what is important is that as Nelson was being escorted by Madison and Lett back to his segregation cell, Officer Bettis[4] was escorting Inmate Bedgood from the Health Care Unit back to his cell in the segregation unit. (*Compare* Doc. 83 *with, e.g.,* Doc. 78, Madison aff., at ¶ 8.)[5] While both inmates and their escorts were traveling in the same direction back to their cells, Nelson and his escorts were on the opposite side of the hallway and ahead of Bedgood and Officer Bettis (by some 5 to 20 feet, by Plaintiff's estimation). (*Compare* Doc. 83, at 1 *with* Doc. 78, Madison aff., at ¶ 9 & Lett aff., at 2). By all accounts, the handcuffed Bedgood[6] bolted from his escort,[7] ran at Nelson and managed to stab the Plaintiff once in the right upper back area with a prison-made knife

---

Madison and Lett (*see, e.g.,* Doc. 78, Madison aff., at ¶ 8 ("As we went out the door I noticed Correctional Officer Kenneth Bettis escorting Inmate Bedgood towards segregation. There were no words exchanged or any other interaction between Bedgood and Plaintiff at that time.")). Nelson claims that when he saw Bedgood he hesitated because he knew Bedgood was a close custody inmate because of his past violent behavior. (Doc. 83, at 1.) According to Plaintiff, Madison instructed him to get a move on because the officer had other duties to which to attend. (*See id.*)

[4]     Less than one month following this incident, Officer Bettis was stabbed to death by Inmate Cleveland Cunningham. (Doc. 7, Exhibit 7.)

[5]     As previously referenced, Bedgood was a close custody inmate in the Segregation Unit at the time of the incident (*compare* Doc. 22 & 83 *with* Doc. 78, Exhibit 11). As the prison regulations describe it, "[c]lose custody is the most restrictive level to which an inmate can be assigned[.]" (Doc. 90, Plaintiff's Exhibit 5.)  And while Nelson highlights that some inmates are assigned to close custody because of assaultive behavior, inmates who demonstrate an inability to adjust to life in general population and escapees are also housed in close custody. (*See id.*) Nelson speculates that because he knew that Bedgood was in close custody because of past violent behavior that Officers Lett and Madison "surely" were aware of the reason Bedgood was in close custody. (Doc. 83, at 1.)

[6]     Bedgood's hands were cuffed to the rear. (*See* Doc. 78, Exhibits 1 & 2, Incident Reports.)

[7]     Plaintiff recalls Bettis exclaiming "Hey." (Doc. 83, at 1.)

(Continued)

before the three escorting officers could separate the inmates.[8] (*Compare* Doc. 83 *with* Doc. 78, Exhibits 1 & 2, Incident Reports; Exhibit 3, Madison aff., at ¶¶ 10-11 & Exhibit 6, Lett aff., at 2.)[9] Nelson was escorted to the Health Care Unit (*compare* Doc. 83, at 1 *with* Doc. 78, Madison aff., at ¶ 13), where he was found to have a 2-centimeter[10] laceration to the right upper back (Doc. 78, Exhibit 8, Body Chart). Nelson was treated in the Health Care Unit and returned to his segregation cell. (Doc. 78, Madison aff., at ¶ 13.) According to Nelson, the treating nurse placed "sterical" stitches[11] on the laceration (*see* Doc. 48) and then covered the laceration and Steri-Strips with a Band-Aid (*see* Doc. 78, Exhibit 9 (photo of Band-Aid on Nelson's right upper back)).

The evidence is also undisputed that on August 18, 2016, Nelson refused to submit a statement regarding the incident. (Doc. 78, Exhibit 10.) In addition, Plaintiff makes no allegations that he and Corey Bedgood had a contentious/adversarial relationship prior to August 18, 2016, of which the named defendants were aware (*compare* Doc. 22 *with* Doc. 83), and, indeed, three of the Defendants specifically state in their affidavits that prior to the incident on August 18, 2016, they were unaware of any

---

[8]     Plaintiff specifically avers that Officers Lett and Bettis took Bedgood to the ground. (Doc. 83, at 1.)

[9]     At the time of this incident, Lieutenant Ashley Kidd was serving as a hearing officer in a disciplinary hearing conducted in the death row shift command office. (Doc. 78, Exhibit 5, Affidavit of Ashley Kidd, at ¶ 5.)

[10]     Two centimeters converts to roughly three-quarters (3/4) of an inch. https://www.howmany.wiki/u/How-many-inch-in-2.5-cm (last visited, December 6, 2018, at 11:23 a.m.).

[11]     In other words, Steri-Strips or butterfly stitches. *See* https://www.verywellhealth.com/how-do-I-rmove-my-steri-strips (last visited December 6, 2018, at 3:34 p.m.) (noting that Steri-Strips are also known as butterfly stitches).

ill will (threats or similar incidents) involving Plaintiff and Bedgood (Doc. 78, Madison aff., at ¶ 3; Brown aff., at ¶ 4; and Kidd aff., at ¶ 3).

Nelson contends that Correctional Officers Madison and Lett were deliberately indifferent to the substantial risk of serious harm to his person both by failing to protect him from the attack by Bedgood (*compare* Doc. 22 *with* Doc. 83, at 1) and by failing to intervene (*see* Doc. 22, at 4), and, as well, seems to suggest that the supervisory defendants (that is, Brown and Kidd) were deliberately indifferent to a substantial risk of serious harm to his person by failing to ensure that Bedgood, a close custody inmate, was properly searched by his escorting officer upon leaving his segregation cell (and, again upon leaving the Health Care Unit) and by failing to ensure a proper escort for the close custody inmate (namely, an escort by two officers, rather than just one) (*compare* Doc. 83 *with* Doc. 22 (Plaintiff speaks in terms of "lack of security" related to the supervisory officers allowing an inmate to come out of his cell and/or the Health Care Unit with a knife)).

## CONCLUSIONS OF LAW

### A.    Summary Judgment Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary

judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Board of Public Educ. for Bibb Cnty*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, supra, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay, Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see

> whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer, supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether the defendants are entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the Plaintiff. *Comer, supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski, supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp., supra,* 43 F.3d at 599.

**B.    Deliberate Indifference to Safety.[12]**

The analysis of Nelson's claims against the Defendants in this case is set against the following backdrop, as delineated in *Martin, supra,* at *4-5:

> "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan,* 511 U.S. 825, 844-845 (1994) (internal quotations and citations omitted).[13] Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id.* at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne,* 326 F.3d 1352, 1358 (11th Cir. 2003). Thus, "not . . . every injury suffered by

---

[12]    As an aside, the undersigned notes that while the Defendants were unable to readily discern whether Plaintiff was making claims against them in their official capacities, as well as their individual capacities (*see* Doc. 78, at 4-5), it is clear to the undersigned, based upon a reading of the relevant pleading (Doc. 22), that Plaintiff sued the Defendants in their individual capacities only for monetary damages (*see id.* at 1 (beside each individually-named defendant, the plaintiff made the notation, "individually")). Moreover, the Plaintiff makes clear in his reply that the Defendants are being sued in their individual capacities (Doc. 81, at 3), no doubt given his recognition that the Defendants would be entitled to absolute "sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities." *Martin v. Bennett,* 2017 WL 6507659, *4 (M.D. Ala. Nov. 21, 2017) (citing *Lancaster v. Monroe County,* 116 F.3d 1419, 1429 (11th Cir. 1997)), *report and recommendation adopted,* 2017 WL 6507658 (M.D. Ala. Dec. 19, 2017).

[13]    "'The Eighth Amendment's ban on cruel and unusual punishment is made applicable to the states by virtue of the Fourteenth Amendment.'" *Johnston v. Crosby,* 135 Fed.Appx. 375, 376 n.4 (11th Cir. June 16, 2005).

one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer,* 468 U.S. 517, 526-527 (1984). The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.' *Popham v. City of Talladega,* 908 F.2d 1561, 1564 (11th Cir. 1990)[.]" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.,* 400 F.3d 1313 (11th Cir. 2005). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) [*abrogated on other grounds by Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)]." *Harrison v. Culliver,* 746 F.3d 1288, 1298 (11th Cir. 2014). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official [was] aware of this substantial risk, the official must [have] react[ed] to this risk in an objectively unreasonable manner." *Marsh,* 268 F.3d at 1028-29. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 837-38; *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer,* 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of sue care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also "draw that inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.[14]

*Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor,* 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*

*Id.* (footnotes added).

As previously explained, the undersigned reads Nelson's complaint to allege that the Defendants acted with deliberate indifference to his safety with respect to the attack perpetrated against him by Corey Bedgood on August 18, 2016. More specifically, Nelson

---

[14] "A claim based on deliberate indifference contains three requirements: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.' . . . To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. [] In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a 'particular threat or fear *felt by [the] [p]laintiff.*' . . . Moreover, the defendant-official 'must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference.'" *Johnston, supra,* 135 at 376-377 (citations omitted).

(Continued)

contends that Defendants Madison and Lett failed to protect him from Bedgood's attack (and/or intervene) by not stopping Bedgood in his tracks before he was able to stab Plaintiff once in the right upper back. Nelson further contends that Defendants Brown and Kidd failed to ensure his safety from attack by Bedgood both by failing to ensure that Bedgood's escort properly searched Bedgood when taken out of his cell in segregation and upon leaving the Health Care Unit to return to segregation and by failing to assign two escorts to Bedgood, who was a close custody inmate.[15]

       **1.**      **Failure to Protect/Intervene—Officers Madison and Lett**.    Nelson identifies his claim against Madison and Lett as a failure to protect in his complaint (Doc. 22) and contends that these officers should have stopped Bedgood before he stabbed him with a prison-made knife (Doc. 83); however, it is understandable to the undersigned why the Defendants viewed Plaintiff as making a failure to intervene claim in his complaint (*see* Doc. 78, at 7-11), inasmuch as Plaintiff certainly avers that these Defendants watched Bedgood stab him and did not "spray him [or] anything[]" (Doc. 22, at 4) and, later, that they did not (intervene to) stop Bedgood from stabbing him (Doc. 83).

       In addition to the legal authority previously referenced, there can be little question but that "[p]rison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." *Terry v.*

---

[15]    Although Nelson seems to suggest that he also asserts this claim against Correctional Officer I Madison (Doc. 22, at 4), any claim against Madison in this regard need fail inasmuch as there is no suggestion, and Plaintiff has made no allegations, that Madison had any supervisory authority over Officer Bettis, Bedgood's escort, or that Madison had any responsibility with respect to assigning escorts to prisoners housed in the Segregation Unit.

(Continued)

*Bailey,* 376 Fed.Appx. 894, 896 (11th Cir. Apr. 27, 2010),[16] citing *Ensley v. Soper,* 142 F.3d 1402, 1407 (11th Cir. 1998). In order for liability to attach, however, "the officers must have been in a position to intervene." *Id.* (citations omitted). In other words, "[a]n officer who fails to intervene in a fight between inmates can be held liable if he 'was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff.'" *Seals v. Marcus,* 2013 WL 656873, *7 (M.D. Ga. Jan. 25, 2013) (citations omitted), *report and recommendation adopted,* 2013 WL 663579 (M.D. Ga. Feb. 22, 2013). The inmate Plaintiff bears the burden of demonstrating that the correctional officer defendant "was in a positon to intervene but failed to do so." *Ledlow v. Givens,* 500 Fed.Appx. 910, 914 (11th Cir. Dec. 12, 2012) (citing *Hadley v. Gutierrez,* 526 F.3d 1324, 1330-31 (11th Cir. 2008)), *cert. denied,* 569 U.S. 1033, 133 S.Ct. 2802, 186 L.Ed.2d 866 (2013).

To the extent Plaintiff means to state both a failure to protect and a separate failure to intervene claim against Defendants Madison and Lett, the undersigned finds that Plaintiff's claims need fail. Initially, the undersigned notes that Lett and Madison maintain they had no knowledge of any impending risk of harm, substantial or otherwise, posed by Bedgood to Nelson. And, indeed, the record is devoid of any evidence that Nelson informed these defendants (or, for that matter, Brown or Kidd) that he was at risk of harm from Bedgood or that he feared for his safety from this inmate. Nelson's mere allegation that that Bedgood was a close custody inmate because of prior assaultive/violent

---

[16] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

behavior—something that Lett and Madison, he presumes, must also have known—fails to establish either of the requisite elements necessary to proceed on a claim of deliberate indifference to his safety. Specifically, there is no probative evidence before the Court of "an objectively substantial serious risk of harm" posed by Bedgood to Nelson prior to the attack[17] as is necessary to establish deliberate indifference. *See, e.g., Johnson v. Boyd,* 568 Fed.Appx. 719, 722 (11th Cir. June 5, 2014) (inmate-attacker's destructive behavior in cell prior to attack did "not sufficiently allege that [attacker's] behavior created a 'strong likelihood' of injury to [inmate-plaintiff]."). In addition, even if Nelson had satisfied the objective component, his claim of deliberate indifference to his safety (on account of a failure to protect from attack) nonetheless fails as he has not demonstrated that Defendants Lett and Madison were subjectively aware of any risk of harm to him posed by Bedgood. The mere fact that Bedgood was in close custody because of assaultive/violent behavior fails to establish that Lett and Madison possessed subjective knowledge that Bedgood posed a substantial risk of harm to Nelson, particularly in light of mere speculation by Plaintiff that these Defendants were aware of the reason Bedgood was housed in segregation and there being no evidence that Nelson complained to these Defendants of any problems he had with Bedgood prior to the attack or that he feared

---

[17]    The undersigned simply notes that given the evidence that Bedgood "bolted" towards Nelson and no doubt covered the 5 to 20 feet between the inmates in a matter of seconds (Plaintiff failing to aver otherwise), it is impossible to understand how Lett or Madison could have stopped Bedgood before he stabbed Nelson inasmuch as the attack was a surprise to both the correctional officers and Nelson.

(Continued)

Bedgood.[18] *Compare, e.g., Carter v. Galloway,* 352 F.3d 1346, 1350 (11th Cir. 2003) (recognizing that deliberate indifference requires more than mere "awareness of [an inmate's] propensity for being [] problematic[.]") *with Chatham v. Adcock,* 334 Fed.Appx. 281, 293-94 (11th Cir. June 24, 2009) ("[A]lthough Plaintiff asserts that [fellow inmate] threatened him repeatedly in the days before the assault, Plaintiff has not identified any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants] . . . . The fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'") and *Johnston, supra,* 135 Fed.Appx. at 377 (where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because Plaintiff presented no evidence that either of the correctional officers had subjective knowledge of the risk of serious harm presented by the attacking inmate against the plaintiff and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt[.]")). Stated somewhat differently, given the suddenness of the attack on Plaintiff from behind by Bedgood, the evidence that both inmates were handcuffed (to the rear) and being escorted back to their cells in segregation by correctional officers, and

---

[18]     In addition, it cannot be stressed enough that the suddenness of the attack by a handcuffed inmate being escorted back to his segregation cell by another correctional officer would bely any finding that Defendants Lett and Madison had subjective knowledge of the risk of serious harm presented by Bedgood. *Cf. Marsh v. Butler County,* 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (observing that "officials, to be liable [for violating the Eighth Amendment], must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk."), *abrogated on other grounds as recognized in Militello v. Sheriff of Broward Sheriff's Office,* 684 Fed.Appx. 809, 813 (11th Cir. Apr. 5, 2017).

there being no facts in evidence that either Lett or Madison was aware of any previous problems between Nelson and Bedgood, any assertion, inferred or otherwise, that the two correctional officers possessed the requisite knowledge of an excessive risk to Nelson's safety or health (because of any general awareness that Bedgood was a close custody inmate because of prior assaultive behavior) *prior* to the attack would be both untenable and disingenuous. *See id.*

To the extent Plaintiff alleges a separate failure to intervene claim,[19] this claim too fails because even if Defendants Lett and Madison became aware of an excessive risk of serious harm upon realizing that Bedgood had attacked Nelson, by Plaintiff's own version of events, Officers Lett and Bettis immediately took Bedgood to the ground after Plaintiff was stabbed once in the upper back. (Doc. 83, at 1.) In other words, the facts establish that the officers immediately intervened and prevented Bedgood from inflicting further damage on Nelson and, therefore, Plaintiff's separate failure-to-intervene claim necessarily fails. *Compare Ledlow, supra,* 500 Fed.Appx. at 914 (recognizing that the correctional defendants must both be in a position to intervene and also that they failed to intervene) *with Johnson, supra,* 568 Fed.Appx. at 722 (finding that even if the complaint

---

[19]    To the extent Plaintiff's claim is, instead, a hybrid failure to protect/intervene claim, Nelson arguing that Lett and Madison failed to protect him from a substantial risk of serious harm by not intervening to stop Bedgood from stabbing him, this claim fails for the reasons already identified. In particular, in light of the specific circumstances of this case, with the attack coming from behind from by a handcuffed inmate being escorted by another correctional officer, there being no known prior altercations between the two inmates, and the officers immediately intervening to separate the two inmates after Nelson suffered a non-life-threatening laceration, there is simply no basis for finding that either Lett or Madison had subjective knowledge of the risk of serious harm presented to Nelson by Bedgood.

(Continued)

could be liberally read to state a claim for deliberate indifference after the physical attack by fellow inmate on Plaintiff, it could not be plausibly inferred that any defendant acted with deliberate indifference because the complaint did not allege that the officers waited an unreasonable amount of time to intervene).

In light of the foregoing, Defendants Lett and Madison are entitled to summary judgment on Nelson's claim(s) that these Defendants were deliberately indifferent to his safety on account of their failure to protect/intervene.[20]

---

[20]     It appears to the undersigned that Plaintiff means to suggest that Defendants Brown and Kidd are liable for failure to protect/intervene because of their supervisory positions over Defendants Lett and Madison (*compare* Doc. 22 *with* Doc. 83); however, this claim, rooted in the theory of *respondeat superior* or vicarious liability, necessarily fails.

> It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991) (citing *Zalter v. Wainwright,* 802 F.2d 397 (11th Cir. 1986)).

*Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999); *see also Staley v. Owens,* 367 Fed.Appx. 102, 107-08 (11th Cir. Feb. 24, 2010) (same), *cert. denied,* 562 U.S. 1149, 131 S.Ct. 931, 178 L.Ed.2d 774 (2011). As this language makes clear, there is no vicarious liability for § 1983 claims unless the supervisors are directly involved in the constitutional deprivation or there is a causal connection between the supervisors and the alleged constitutional deprivation. *See id.* Here, as previously found, the actions/inactions of Lett and Madison do not warrant the imposition of liability. In addition, there is no evidence that either Brown or Kidd were directly involved in the incident that led to Plaintiff's non-life-threatening injury. Indeed, Brown was in the Segregation Unit's shift (Continued)

**2.    Inadequate Security—Failure of Defendants Kidd and Brown to Protect Nelson from Attack by Bedgood.**  Nelson contends that Defendants Brown and Kidd failed to protect him from attack by Bedgood by not ensuring that Officer Bettis properly searched Bedgood for weapons[21] and by failing to ensure that Bedgood was properly escorted to and from the segregation unit (by two guards instead of just one). (*Compare* Doc. 22 *with* Doc. 83.)[22]  And while Plaintiff would, perhaps, prefer that this Court consider his conclusory averments in isolation, this Court must necessarily consider Plaintiff's claim against Brown and Kidd within the context of all facts and circumstances, including protective measures, evident in this case.

Here, both Nelson and Bedgood were handcuffed (to the rear) and were accompanied by separate correctional escorts as they walked down the hallway outside

---

office at the time of the attack and Kidd was even further removed, as she was serving as a hearing officer in a disciplinary hearing conducted in the death row command office. Finally, Plaintiff has failed to establish that his injury was causally connected to a policy, practice, procedure, etc. of Defendants Brown and Kidd such that supervisory liability would be proper.

[21]    Any allegation by Plaintiff that Officer Bettis performed no search of Bedgood (*see* Doc. 83, at 1 (suggesting that if "Bettis would have searched Bedgood, like [Plaintiff] was [upon leaving his segregation] cell . . .); *but cf.* Doc. 81, Reply, at 5 ("C.O. Bettis[] failed to **properly** search & secure inmate Bedgood.")) is rank speculation inasmuch as Nelson was certainly not an eyewitness to Officer Bettis' interactions with Bedgood prior to finding himself in the segregation hallway with Bedgood and Officer Bettis. Moreover, Officer Bettis is not a Defendant to this action and cannot relay to this Court his precise interactions with Bedgood on August 18, 2016, because Officer Bettis was stabbed to death by an inmate approximately a month after this incident. Thus, at best, Plaintiff (who has expressly stated that he was searched by his escorting correctional officers) can aver that Officer Bettis did not properly search Bedgood and discover the prison-made knife prior to its use against Nelson, as he states in his reply (Doc. 81, at 5).

[22]    As previously indicated, Nelson has no basis to assert this claim against Defendant Madison as Plaintiff has offered no evidence that Madison was with Bettis when Bedgood was searched (or, otherwise, supervised Bettis) or that he had any supervisory responsibility with respect to assigning guards to escort close custody inmates.

(Continued)

the segregation office toward their segregation cells. In addition, there is absolutely no evidence of record that Plaintiff placed either Brown or Kidd on notice that he had a contentious relationship with Bedgood or that he feared Bedgood.[23] As well, there is no evidence to suggest that the segregation unit had experienced widespread attacks by handcuffed and escorted inmates on other handcuffed and escorted inmates (before this incident) due to improper searches and/or inadequate escorts. Therefore, even assuming that Nelson has satisfied the objective element of his Eighth Amendment claim against Brown and Kidd,[24] the foregoing facts and circumstances bely any finding that these Defendants knew of a substantial risk of serious harm to Plaintiff and were deliberately indifferent to that risk. *See Farmer, supra,* 511 U.S. at 828, 114S.Ct. at 1974. Indeed, at best, any failure by Brown and Kidd to ensure that Officer Bettis properly searched Bedgood and that Bedgood, a close custody inmate, had more than one official escort is

---

[23]     In fact, the evidence makes clear (and is undisputed) that neither the Defendants nor Plaintiff himself had any prior knowledge that Plaintiff was in any danger of attack from inmate Corey Bedgood on August 18, 2016.

[24]     The undersigned questions whether the objective element is met here given that the failures attributed to Brown and Kidd by Plaintiff do not, when considered in the context of the protective measures taken in this case, establish a strong likelihood of risk of injury, as opposed to a mere possibility. *Compare Johnson, supra,* 568 Fed.Appx. at 721 ("When examining the existence of a substantial risk of serious harm, the district court uses an objective standard. *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1099 (11th Cir. 2014). There must be a strong likelihood of risk of injury, rather than a mere possibility before an official's failure to act can constitute an Eighth Amendment violation. *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990).") *with, e.g., Harrison v. Culliver,* 746 F.3d 1288, 1300 (11th Cir. 2014) (finding that although increasing the number of officers in an area of the facility "may have improved security . . ., [the warden's] decision not to do so did not create a substantial risk of harm.").

(Continued)

attributable to these Defendants' negligence,[25] not deliberate indifference. *See, e.g., Gooden v. Mormon,* 524 Fed.Appx. 593, 597 (11th Cir. July 31, 2013) (finding that Deputy Warden's "alleged failure to comply with prison policies may well be negligent, but it is not, in and of itself, a constitutional violation."). Consequently, Plaintiff cannot establish the subjective element of his Eighth Amendment claim against Brown and Kidd because he has not established that these two supervisory defendants knew that he faced a substantial risk of serious harm and deliberately chose to ignore that risk.

In light of the entirety of the foregoing analysis,[26] the Magistrate Judge **RECOMMENDS** that the Defendants' motion for summary judgment be granted[27] and that

---

[25]     Negligence, of course, is not enough to establish a violation of the Eighth Amendment. *See, e.g., Patton v. Rowell,* 678 Fed.Appx. 898, 901 (11th Cir. Feb. 2, 2017), citing *Lane v. Philbin,* 835 F.3d 1302, 1308 (11th Cir. 2016).

[26]     The undersigned also parenthetically finds that Plaintiff has not established a causal connection between any of the Defendants' conduct and the harm he suffered, *see, e.g., Days v. Crickmar,* 701 Fed.Appx. 883, 885 (11th Cir. July 18, 2017) ("To hold a prison official liable for deliberate indifference, an inmate-plaintiff must meet three requirements. First, the plaintiff must show that he faced a substantial risk of serious harm. Second, the plaintiff must establish that the defendants subjectively knew of the risk, but they disregarded it by failing to respond in an objectively reasonable manner. And third, the plaintiff must show a causal connection between the defendants' conduct and the harms to the plaintiff." (internal citations omitted)), because Nelson's evidence does not conclusively show that the actions (or inactions) of the Defendants were the but for cause of his non-life-threating injury; rather, the evidence establishes that the but for cause of Plaintiff's back laceration was the action of Inmate Corey Bedgood in attacking him from behind with a prison-made knife. Indeed, combining the allegations of Plaintiff with those of the Defendants, it is clear that neither Nelson nor the Defendants were aware of any potential risk to his person posed by Bedgood.

[27]     Given that Nelson has been unable to establish an Eighth Amendment deliberate indifference claim against any of the Defendants, there is no need for this Court to address whether the named correctional officers are entitled to qualified immunity. *Jordan v. Secretary, Dep't of Corrections,* 502 Fed.Appx. 834, 838 (11th Cir. Dec. 20, 2012).

(Continued)

Plaintiff's claims that the Defendants acted with deliberate indifference to his safety be dismissed with prejudice.[28]

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that the Defendants' motion for summary judgment (*compare* Docs. 78 & 88 *with* Doc. 95) be **GRANTED** and that Plaintiff's claims be **DISMISSED WITH PREJUDICE.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1)

---

[28]     To the extent Nelson means to suggest in his reply to the Defendants' motion for summary judgment that he is advancing new claims for violation of his procedural or substantive due process or equal protection rights (*see* Doc. 81, at 4 & 6), the undersigned recommends that the Court find that these are new theories/claims which it has no obligation to consider since Plaintiff cannot amend his complaint in response to a dispositive motion. *See Ganstine v. Secretary, Florida Dept. of Corrections,* 502 Fed.Appx. 905, 909-10 (11th Cir. Dec. 26, 2012) (holding that a plaintiff may not amend his complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Chavis v. Clayton County School District,* 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) (noting that the district court did not err in refusing to address a new theory raised during summary judgment brief because the plaintiff had not properly amended the complaint with respect to that theory).

waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 21st day of December, 2018.

s/P. Bradley Murray_____
**UNITED STATES MAGISTRATE JUDGE**